MRS. LULA E. PITTMAN v. MISSOURI STATE LIFE INSURANCE CO.

Western Section. July 24, 1930.

Harry L. Adams, of Memphis, and Taylor, Adams & Freeman, of Trenton, for appellant.

Stickley & Fitzhugh and Chas. S. Seay, all of Memphis, for appellee.

SENTER, J.  By her original bill filed in this cause, the complainant, Mrs. Lula E. Pittman, sued the defendant, the Missouri State Life Insurance Co., on a policy of insurance issued by the defendant on the life of her minor son, and in which policy she was named as the beneficiary.  The policy was for the sum of $2,000, containing a double benefit clause in the event of accidental death.  She also sued for the statutory penalty, alleging bad faith on the part of the defendant in refusing to settle the claim without suit.  The defendant filed an answer and cross-bill, by which it denied any liability under the terms and provisions of the policy, and by way of cross-bill sought to recover the amount of $500 which it had paid to complainant under a previous settlement by which the defendant alleged that it had paid to complainant the sum of $500 and had retained the further sum of $3500 upon which it had agreed to pay interest, and this settlement was the result of an error or a mistake upon the part of one of its clerks who handled the proofs of death and was, in fact, a mutual mistake, which was not discovered until subsequent to the payment of the $500 and the retention of the $3500 in one of the settlement clauses contained in the policy.

A jury was called for by the complainant to try the issues of fact, but at the trial of the cause the jury was waived by the consent of the parties, and the cause heard by the Chancellor on depositions and oral evidence, resulting in a decree in favor of the complainant for the sum of $4,000 and interest thereon, and the further sum of $800 as a penalty under the statute, and dismissed the cross-bill.

From this decree the defendant has appealed to this court. Numerous errors have been assigned. There is contained in the record a finding of the facts and an opinion by the Chancellor.

It appears from the record that on July 28, 1926, the defendant issued a policy of life insurance on the life of James E. Pittman, a young man seventeen years of age, and complainant, Mrs. Lula Pittman, was named the beneficiary. The policy was for the sum of $2,000, and in the event of death by accidental means, provided no premiums were in default, it would pay double benefits, or $4,000. On June 17, 1929, the insured was accidentally killed by an automobile truck. Proof of death was properly and seasonably made, and the defendant admitted its liability for double indemnity and made a settlement on that basis with complainant. One of the settlements under the policy gave the beneficiary the right to immediately receive a portion of the policy and to leave with the company the remainder and upon which the defendant would pay six per cent interest, and such balance could be withdrawn by the complainant. This plan of settlement was agreed to by the complainant, and the necessary papers were signed by her, and whereupon the defendant delivered to her its check for the sum of $500, less an amount of $45.48 of the loan and interest thereon, or a net sum of $454.52. The balance of the $4,000, amounting to $3500, was retained by the company under what is referred to as "deferred settlement request," to be held by the defendant and to be paid to her on her demand in sums of $500 or multiples of $500.

It appears that on July 28, 1926, James E. Pittman, the insured, paid the first annual premium of $48.70; that he paid the second annual premium on or before July 28, 1927. The third annual premium became due on July 28, 1928. At that time the insured informed the general agent of defendant in Memphis, a Mr. Holly, that it was not convenient for him to pay the premium at that time, and whereupon, Mr. Holly, the general agent, explained to the insured that a premium settlement could be made by applying the earned value of the policy and the sum of $5.70 in cash, and suggested that the insured execute what is referred to in the record as a "Blue note," for the difference between $5.70 cash paid and the amount of the premium, the blue note to be payable November 28, 1928, and that at that time, November 28, 1928, the policy would have a loan value sufficient to carry the policy until the next anniversary date, or July 28, 1929. Acting upon this suggestion, the insured paid to the general agent the sum of $5.70 and executed the blue note, due November 28, 1928, for the sum of $43. The cash payment of $5.70 was estimated by the general agent to be the amount which would be sufficient to carry the policy until the value of the policy would take care of the blue note at its maturity, and he explained to the insured that the blue

note, at maturity, would be paid out of the value of the policy. The .$5.70 and the blue note was accepted by the defendant. The insured died on June 27, 1929, as the result of the automobile accident.

Soon after the settlement was made by the defendant with the complainant and the check delivered to her for the sum of $500 less the loan and interest thereon against the policy and her election to place the remaining $3500 with the defendant at six per cent interest, the defendant communicated with complainant that an error had been made, and because of certain conditions contained in the policy with reference to unpaid premium, that its liability was only $2,000 and that the double indemnity did not apply, and requested her to sign new papers reducing the amount left in the hands of defendant to $1500. The complainant declined to do this, insisting that the double indemnity or benefit clause applied and that the first settlement was correct. Whereupon, the defendant sent her a check for the sum of $1500 in full settlement of the balance due her on the policy. Complainant declined to accept this check and returned it to the defendant. Whereupon, she filed the original bill in this cause.

Under the several assignments of error appellant contends that the blue note signed by the insured and due November 28, 1928, was not paid at maturity, and that the application signed by the insured for the insurance specifically stated that the payment of premiums to be without automatic loan privilege, and that with this statement in the application by the insured that ''the automatic loan privilege'' could not be applied by the defendant except upon a subsequent request made in writing by the insured to the defendant, and that the insured never made a written request to the defendant that the automatic loan privilege be applied to the premium, but elected to use the blue note method of deferring the payment of the annual premium due on July 28, 1928. This blue note contained the following provisions and conditions:

''That although no part of the . . . annual premium due on the 28th day of July, 1928, on policy No. 569048 has been paid, the insurance under said policy shall, subject to any indebtedness thereon, be continued in force until midnight of the due date of this note; that if this note is paid on or before the date it becomes due, such payment, together with said cash, will then be accepted by said company as payment of said premium, and all rights under said policy shall thereupon be the same as if said premium had been paid when due; that if this note is not paid on or before the day it becomes due, it shall thereupon automatically cease to be a claim against the maker, and said company shall retain said cash as part compensation for the rights and privileges hereby granted and as the earned premium for the insurance granted from the maturity of said premium to the

maturity of this note, and all rights under said policy shall be the same as if said cash had not been paid nor this agreement made.''

It is admitted by complainant that the blue note was not paid in cash by the insured on or by its due date. But it is contended that the defendant, through its general agent, Mr. Holly, advised the insured that when the blue note became due the loan value on the policy would be sufficient to carry the policy until the next premium date, which would be July 28, 1929, and that the defendant would automatically apply the loan privilege. Mr. Holly testified as a witness for complainant and the substance of his evidence on that subject is to the effect that he did so advise the complainant and he further testified on the same subject that such procedure had been the uniform custom of the defendant since 1925. The general rule is that the insured is bound by all conditions and stipulations contained in the contract of insurance, or in any notes executed for premiums. Blue notes of similar tenor as the one involved herein have frequently been before the courts for construction and interpretation, and it is generally held that the provisions of such a note are binding upon the insured. (Robnett v. Cotton States Life Ins. Co., 230 S. W., 257 (Tenn.); Citizens National Life Ins. Co. v. Morris, 104 Ark., 238, 148 S. W., 1019; New York Life Ins. Co. v. Allen, 143 Ark., 123, 220 S. W., 803; Bank v. Life Ins. Co., 125 Ga., 552, 54 S. E., 643; Life Ins. Co. v. Adler, 58 Ind. App., 530, 73 N. E., 835; Eddie v. Life Ins. Co., 242 Pac., 501.)

We are of the opinion that unless the insured in the present case was relying upon the assurances given him by the general agent of the defendant to the effect that the automatic loan privilege would be applied by the defendant to take care of the blue note; or unless it appeared that it was the custom of the defendant to automatically apply the loan privilege without a written request from the insured, that the insured would be bound by the provisions of the blue note.

It is not contended by appellant that on November 28, 1928, the loan value of the policy was not sufficient to satisfy the note due on that date, together with the $5.70 cash and to carry the policy until the next anniversary date of July 28, 1929.

But as above stated, appellant contends that a clerk in the offices of the defendant who made the record on the recordation card, and upon which the defendant relied in making the first settlement with complainant, committed an error, and proceeded on the assumption that the application by the insured did not contain the words ''without automatic loan privilege,'' or that the written request for the automatic loan privilege had been regularly made by the insured; that this was an error.

We have carefully examined the record in this case, and we are of the opinion that the Chancellor is supported in his finding of the

facts by a decided preponderance of the evidence. Since we fully concur both in the finding of the facts and the conclusions of law reached by the Chancellor, and adopt the same as the finding of the facts by this court, and also the opinion of this court, we here set out the same; omitting the first paragraph of the finding of the facts since we have already stated these facts sufficiently:

"(2) It appears that on July 28, 1926, James E. Pittman, the insured, paid the first annual premium of $48.70; that he paid the second annual premium on or before July 28, 1927; that when the third annual premium became due on July 28, 1928, he paid the sum of $5.70 in cash to defendant's general agent, at Memphis, and executed what is called a 'blue note' for $43, payable November 28, 1928. The cash payment of $5.70 was estimated by the general agent to be the amount which would be sufficient to carry the policy until the value of the policy would take care of the note at its maturity, and he explained to the insured that the note, at maturity, would be paid out of the earned value of the policy. It appears that said cash payment and said note were forwarded by said general agent to the company's home office and there a record was made of the transaction. When the note matured the defendant paid it by making an automatic loan against the policy. The charging of the amount due on the note against the policy was a payment of the premium and carried the policy in force until the next anniversary date, July 28, 1929. It is the customs and practice of the defendant to notify the insured when a note has been paid by automatic loan against the policy. Defendant sent insured notice of premium due July 28, 1929. It sent insured notice of interest on premium loan, showing $2.74 due. These notices were sent prior to June 20, 1929, for on that date defendant was notified of the death of the insured."

Paragraph 3 begins with a quotation of the "Automatic Premium Loans" which we omit, and proceeds:

"It appears that the insured in his application of said insurance requested that payment of premiums to be 'Without Automatic Loan Privilege.' It appears that the insured did not subsequently in writing received at the home office request the automatic loan privilege. The basis of denial of any liability on said policy is that the note given by the insured was paid by the exercise of the automatic premium loan without taking notice of the fact that the insured had not requested such privilege either in his application or by subsequent written request.

"Had there been no understanding between the defendant through its general agent, at Memphis, and the insured, that said note would be paid at maturity out of the reserve value of the policy, there would be merit in the defense offered. In other words, the requirements of the policy, with respect to the necessity of requesting the benefit

of automatic loan, either in application for the insurance or by subsequent writing addressed to the home office, while no premium was in default, would govern, unless waived by the company. The record shows without contradiction, that the understanding between the general agent and the insured was that said note would be paid out of the reserve value of the policy. This understanding was had without the requirement of a written request for the benefit of an automatic loan. Certainly the requirement of the policy for such written request could be waived by the company. Such request at best, was a mere technical formality. The company had no option about granting the benefit of an automatic loan when asked. The record shows that it was the custom and practice of the defendant, where a note was given to cover premium in cases of the type of policies here involved, to pay such note, by a loan against the policy, whether requested or not, where the reserve value of the policy justified such action. In my judgment, defendant through its general agent, at Memphis, clearly and unmistakably waived the necessity of the insured making written request for the benefit of an automatic premium loan. The general agent was not only acting within the apparent scope of his authority, but was acting in accord with the custom and practice of the company. The officials of defendant company, at the home office, readily understood the transaction when the $5.70 cash and the note for $43 were forwarded to them. Without hesitation, when the note matured, they caused their record to show it paid it by an an automatic loan against the policy. They acted in accord with their custom and practice of giving the benefit of an automatic loan, even though not formally requested. The risk was good. The insured was then about nineteen years of age. The company, naturally, had no desire to lose this business because of non-compliance with the technical requirement that written request must be made for automatic premium loans, when in fact, the policy had a sufficient value to justify the loan. I do not believe that defendant made any mistake in extending the automatic loan against the policy and in showing the insured's note paid on their records. Such action was not the result of a mistaken belief that the insured in his application had requested automatic premium loan, but was the result of their perfect willingness to grant such privilege when sufficient reserve value of a policy existed. Mr. Holley, defendant's general agent at Memphis, at the time of the transaction here involved, says in his testimony: 'I never had a policy to lapse where the privilege of giving a note was given.'

"The record fully justifies the belief that had the insured not died no claim of forfeiture of the policy here sued on would ever have been made.

"In my opinion the general agent of defendant, at Memphis, was acting within the apparent scope of his authority when he explained

to the insured that the $5.70 would carry the policy to the date of maturity of the note, at which time the reserve value of the policy would be sufficient to pay it. And not only was he acting within the apparent scope of his authority, but was acting in accord with the custom and practice of the company. The requirement of written request for automatic premium loan was clearly waived by the defendant. . . .''

The attorneys for the defendant in the able brief filed, and in the able argument made at the bar of this court, urge that the conclusions reached by the Chancellor were largely based upon the evidence of Mr. Holley, who was not connected with the defendant at the time he testified. It is urged that Mr. Holley was aiding the complainant in her suit, and had recommended the attorneys to her who now represent her, and that he has a suit now pending against the defendant, and that his evidence in many particulars is in conflict with the evidence of four of the officials of the defendant.

It is also urged by appellant that Holley contradicts himself in many important particulars pointed out in the brief. We have carefully examined the evidence of Mr. Holley. He was connected with the Missouri State Life Insurance Co. as its general agent at Memphis for several years, and voluntarily resigned his connection with the defendant. We do not find anything in his evidence or in the record that reflects upon his integrity or motive, or that reflects upon his credibility as a witness. We do find much in the record in corroboration of Mr. Holley. As found by the Chancellor, the record shows that the defendant actually charged the loan value to the note, or applied the same. It is also undisputed that the general custom was to make the automatic application of the loan value without requiring written request by the insured. The fact that the defendant sent notices prior to June 20, 1929, to the insured of the premium due on July 28, 1929, and also the interest on the loan, is very significant, and tends to corroborate the evidence of Mr. Holley to the effect that it was the custom of the defendant to make the automatic application of the loan to premium notes so as to keep the policy in force, without written request.

We find no error in the decree of the Chancellor on the question of the right of complainant to recover the amount of the policy with double indemnity, $4,000, less the $500 already paid, with interest as decreed by the Chancellor.

This brings us to a consideration of the question with reference to the recovery allowed by the Chancellor as statutory penalty. While it would appear from the conduct of the defendant in first settling the claim with complainant at $4,000, and then subsequently to admit liability for $2,000, and after suit was brought to deny liability for any amount, this is explained by the officials of the defendant to have

resulted from an alleged clerical error by one of its clerks or other employees. It is also true that the defendant probably did not know until the trial of the case, or the filing of the bill, just what representations had been made to the insured by its former general agent, Mr. Holley.

We have carefully examined the record, and upon a consideration of the entire record, we cannot find any sufficient evidence or indication of bad faith upon the part of the defendant to warrant a recovery under the statutory penalty. This statute must be strictly construed in favor of the insurance company, and the bad faith must be apparent. (Fire Ins. Co. v. Kirkpatrick, 129 Tenn., 55; Timball v. Parks, 151 Tenn., 103.) The burden of proving bad faith of defendant is on the complainant. (Life & Cas. Ins. Co. v. Robertson, 6 Tenn. App., 43.) If the defense is unsuccessful, but made in good faith, a recovery will not be allowed under the statute for the statutory penalty. (Tittworth v. Life Ins. Co., 6 Tenn. App., 206.) We cannot say under the record and facts of this case that the refusal of the defendant to pay this claim was in bad faith and insincere. We are therefore of the opinion that the learned Chancellor was in error in allowing a recovery of $800 under the Statutory Penalty Act. The assignment of error based on this action of the Chancellor in allowing the recovery for the penalty, is sustained. All other assignments of error are overruled, and the decree of the Chancellor will be modified by disallowing a recovery for the $800 penalty, and the decree of the Chancellor for the sum of $4,000 with the accrued interest thereon, and the costs of the cause, is affirmed. Judgment will be rendered here for the sum of $3500, the balance of the $4,000, with interest thereon at the rate of six per cent from July 27, 1929, and all costs of the cause, in favor of complainant and against the defendant and sureties on the appeal bond, including the cost of this appeal.

Owen and Heiskell, JJ., concur.