Robert M. NELMS, Appellee,

v.

TENNESSEE FARMERS MUTUAL IN-
SURANCE COMPANY, Appellant.

Court of Appeals of Tennessee,
Eastern Section.

Oct. 3, 1978.

Certiorari Denied by Supreme Court
Feb. 12, 1979.

Paul Campbell, Jr. of Campbell & Campbell, Chattanooga, for appellant.

Edward A. Love, Chattanooga, for appellee.

## OPINION

PARROTT, P. J. (E. S.).

Robert Nelms brought this suit against his automobile insurance carrier, Tennessee Farmers Mutual Insurance Company, to collect for the theft loss of a 1975 jeep. In accord with the jury's verdict, judgment was entered in favor of Nelms for $4,795.00, the value of the jeep, $300.00 rental expense, and $1,198.75 bad faith penalty as provided by T.C.A. 56–1105.

From the action of the circuit judge in overruling defendant's motion for new trial and entering judgment, Tennessee Farmers Mutual has appealed and assigned several errors.

In October 1976, Robert Nelms purchased new a 1975 jeep Renegade. On February 21, 1977, Robert Nelms and his brother used the jeep to go rabbit hunting. Early in the morning, at about daylight, Nelms parked the jeep at Harveys Cemetery, a remote area in Sequatchie County. According to Nelms, he and his brother walked across a field and were gone approximately 15 or 20 minutes and upon returning discovered the jeep was gone. Nelms gave as their reasons for returning that the weather was too cold and some other dogs jumped one of the Nelms' hunting dogs. After discovering the jeep gone, Nelms and his brother walked some four miles to the house of his mother-in-law where Nelms called the sheriff's office to report the jeep missing. Nelms was instructed to remain at the the Brown house until someone arrived from the sheriff's office. After a person named Grant came to the Brown house, Nelms went home, changed clothes, and drove to Dunlap where he reported the loss to Frank Silvers, the agent who sold the policy. Upon Silvers' instructions Nelms later conferred with Jack Mitchell, an adjuster for Tennessee Farmers Mutual. Although the loss was reported to the sheriff about 7:30 a. m., the sheriff did not immediately commence his investigation but stayed in the office to complete some paper work.

Sheriff Avery Hickey testified that about 9:30 a. m. or 10:00 a. m., a short distance from where it was allegedly stolen, the jeep was found completely stripped and all that was left was the body shell and hood which had been pushed over a bluff. The bluff was the first place Sheriff Hickey looked because in the past several vehicles had been stripped and pushed over the bluff. Sheriff Hickey testified that snow was found in the body shell of the jeep and the last time it snowed in Sequatchie County was the previous Saturday night before the alleged theft on Monday morning. He further testified that at the top of the bluff there were tire marks in the frozen earth which led to the edge of the bluff. At the end of the tire marks there were indentations in the frozen ground which were comparable in size to the jeep's body found at the bottom of the bluff. Also there was frozen in the ground on the top of the bluff a master cylinder cap which would have fit the master cylinder on the jeep.

After completing his investigation at the bluff, the sheriff sent word for Robert Nelms to get in touch with him. On the evening of the alleged theft Nelms went to the sheriff's office where the sheriff gave him the *Miranda* warnings before commencing the questioning. It is clear from the sheriff's testimony that he did not believe the jeep went over the bluff on the morning it was allegedly stolen but had been pushed over the bluff at an earlier date.

It is clear from the above proof that it was a question for the jury to determine if the jeep had been stolen on Monday morning as alleged by the plaintiff or if it had been stripped at an earlier date and pushed over the bluff. There is testimony that a jeep such as this could have been stripped in forty-five minutes to an hour. Also there is testimony that at the cemetery there were no tire prints nor could the officer find any indication the jeep had ever been parked at the cemetery.

■ In the review of a judgment based on a jury verdict, the appellate courts in this state do not weigh the evidence or decide where the preponderance lies but merely determine whether there is material evidence to support the verdict. *City of Chattanooga v. Rogers*, 201 Tenn. 403, 299 S.W.2d 660 (1956); *Dorrity v. Mann*, 43 Tenn.App. 554, 310 S.W.2d 191 (1957). This does not mean that the appellate courts must accept as credible evidence the impossible. Our courts recognize and follow the "physical evidence rule." Courts may disregard impossible or palpably improbable testimony and treat it as no evidence. Further, testimony of facts inherently impossible and absolutely at variance with well-established and universally recognized physical laws is not credible evidence. *Oliver v. Union Transfer Co.*, 17 Tenn.App. 694, 71 S.W.2d 478 (1934); *Lowe v. Preferred Truck Leasing, Inc.*, 528 S.W.2d 38 (Tenn. App.1975).

■ In the instant case the alleged theft of this jeep under the circumstances and conditions as testified to by plaintiff and his witnesses is highly suspicious. We find ourselves unable to say that the testimony given can be disregarded under the physical evidence rule and be treated as no evidence. It is not a question whether this Court believes the plaintiff's evidence. The issue to be resolved in this Court is: Is there credible evidence offered by the plaintiff which is capable of being believed by reasonable men who are sitting as a jury? The fact that snow was in the jeep's body when it had not snowed for some two or three days does not conclusively prove that the jeep was pushed off the bluff at an earlier time. The jury could have concluded that as the jeep went down the mountain snow collected in the body or it could have been concluded that from a previous snow, some snow remained in the body even after tumbling down the mountain. The proof of the jeep's being stolen sometime around 6:30 and not discovered until 9:30 or 10:00 a. m. along with testimony that such a vehicle could be stripped in forty-five minutes to an hour enables the jury to accept the plaintiff's theory of the loss. Therefore, the several assignments of error that there was no evidence to support the verdict, that plaintiff was entitled to a directed verdict, and that the trial judge failed to act as thirteenth juror are overruled.

■ One assignment complains that the circuit judge erred in not allowing the defendant to make the plaintiff's discovery deposition an exhibit to the case. The record indicates that defendant's attorney was permitted to fully use the discovery deposition in cross examination. After cross examination was completed, defendant's attorney wanted to introduce the deposition as an exhibit and in his brief states that by introducing the discovery deposition "the Court of Appeals should have the right to see the discovery deposition and see how many times the plaintiff's testimony varied at the trial from what he had previously sworn." The Court of Appeals can only review that proof which was introduced before the jury. If the jury was not permitted to see the entire deposition, certainly the Court of Appeals would not consider it. Rule 26.04 (now Rule 32.01) of the Tennessee Rules of Civil Procedure clearly permits

the deposition of a party to be admissible in evidence for any purpose. Under the rule defendant's attorney had the right to read any or all of the deposition to the jury but not to file the same as an exhibit without giving the jury the opportunity to know the contents of the deposition.

■ Other assignments complain the defendant was prejudiced by comments and remarks of the trial judge. One of these remarks was at the close of the second day of trial. Defendant's attorney offered a witness and the trial judge said: "No. I don't think the jury needs to be bored the rest of the evening." He then recessed until the next morning. Another comment complained of was when the trial judge said: "If there is a conflict between the law of the state and the policy, then the policy will control." The latter remark came about in a discussion with counsel when counsel for the defendant asked his witness to read the bad faith section of the Tennessee Code. The trial judge quickly advised that he would charge the correct law.

We do not see that either or both of these remarks affected the results of the trial. If the remarks were error, they are at the most harmless error. T.C.A. 27–117.

There are three assignments of error directed to the charge. To quote the parts of the charge complained of would unduly lengthen this opinion. We have examined closely the three portions of the charge complained of and when the charge as a whole is considered, we find no error in the charge. Let the assignments directed to the charge be overruled.

■ Defendant assigns as error the jury's returning a verdict in the amount of $300.00 for car rental. We sustain this assignment of error. There is not one iota of proof that the plaintiff Nelms expended any amount for car rental. Simply put, there is no evidence to support the amount of the jury's award.

■ Defendant has also assigned as error the trial judge's submitting to the jury and accepting its award of 25 percent bad faith penalty as provided in T.C.A. 56–

1105. The burden of proving bad faith of an insurance company is on the plaintiff. *Life & Casualty Ins. Co. v. Robertson*, 6 Tenn.App. 43 (1927); *Pittman v. Missouri State Life Ins. Co.*, 12 Tenn.App. 228 (1930). The bad faith penalty is not recoverable in every refusal of an insurance company to pay a loss. An insurance company is entitled to rely upon available defenses and refuse payment if there is substantial legal grounds that the policy does not afford coverage for the alleged loss. If an insurance company unsuccessfully asserts a defense and the defense was made in good faith, the statute does not permit the imposing of the bad faith penalty. *Silliman v. International Life Ins. Co.*, 135 Tenn. 646, 188 S.W. 273 (1915); *Smith v. Continental Ins. Co.*, 63 Tenn.App. 48, 469 S.W.2d 138 (1971).

■ In the instant case when one looks at the circumstances and conditions surrounding the disappearance of the jeep, we believe there was valid reasons for the insurance company to question the loss. Further, we think the insurance company honestly and in good faith believed that the jeep was not stolen and that its policy was not liable for the loss. For the above reasons we think there is no material evidence to support a finding of bad faith and the invoking of the statutory penalty. Therefore, we sustain appellant's assignment of error requesting that the bad faith penalty be stricken.

There are other assignments of error complaining of the introduction of certain evidence. We have considered these assignments and find them without merit.

We affirm, except as modified. The costs incident to this appeal will be equally divided between the parties. All other costs will remain as taxed.

SANDERS and GODDARD, JJ., concur.