IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
February 15, 2005 Session

## ANTONIO DEWAYNE BLEDSOE v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County
No. 98-D-2709     Seth Norman, Judge**

---

**No. M2004-01132-CCA-R3-PC - Filed May 24, 2005**

---

The Appellant, Antonio Dewayne Bledsoe, appeals the denial of his petition for post-conviction relief by the Davidson County Criminal Court. On appeal, Bledsoe contends that he was denied the effective assistance of counsel and, as a result, his nolo contendere plea was not knowingly and voluntarily entered. After review, we affirm the denial of the petition.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

DAVID G. HAYES, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and THOMAS T. WOODALL, J., joined.

Kathleen G. Morris, Nashville, Tennessee, for the Appellant, Antonio Dewayne Bledsoe.

Paul G. Summers, Attorney General and Reporter; Michael Markham, Assistant Attorney General; and Dan Hamm, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

### Factual Background

In November 1998, a Davidson County grand jury returned a seven-count indictment against the Appellant and two co-defendants, Tino Skinner and Anthony Collier,[1] charging them with four counts of attempted first degree murder, one count of attempted aggravated robbery, one count of first degree felony murder, and one count of aggravated robbery. The facts underlying the indictment, as presented at the guilty plea hearing, are as follows:

. . . [o]n Sunday morning, September 7, 1997 at approximately two-thirty in

---

[1]Collier was charged only in Counts 1-4 with attempted first degree murder, attempted aggravated robbery, first degree felony murder, and aggravated robbery.

the morning, [the Appellant], Tino Skinard,[2] Anthony Collier, and others, went in two cars to the dead end of Reservoir Court. All these individuals attempted to gain entry to the back door of 929 Reservoir Court for the purpose of robbing the occupant of money, guns, or drugs.

. . . .

Keith Stevenson Rice answered the door at 929 Reservoir Court. One of the persons in this group fired the AK forty-seven and shot Keith Stevenson Rice in the chest, killing him. The robbery was thwarted by Mike Battle, who returned fire.

. . . .

Earlier that morning [the Appellant], Anthony Collier, and Tino Skinard actively participated with others in the aggravated robbery of Tracy Marshall. . . .

On August 23, 1997 [the Appellant] and Tino Skinard actively participated in the drive-by shooting of Calvin Gibson. The AK forty-seven which shot Mr. Gibson - - who did survive his injuries, . . . - - also fired the shot that killed Keith Stevenson Rice.

Trial counsel was appointed to represent the Appellant, and an investigator was hired to assist in the defense. On June 16, 2000, the Appellant entered a nolo contendere plea to one count of facilitation of first degree murder and was sentenced to a term of twenty years as a Range I offender. All other charges were dismissed. The trial court reviewed the standard litany of rights with the Appellant before accepting the plea, and the Appellant specifically stated that he was entering into the agreement both knowingly and voluntarily.

On May 23, 2001, the Appellant filed a *pro se* petition for post-conviction relief alleging, among other grounds, ineffective assistance of counsel. Counsel was appointed, and an amended petition was filed. The Appellant, again proceeding *pro se*, filed a second amended petition dated January 27, 2003. A hearing was held on March 2, 2004, at which the Appellant, trial counsel, and Tino Skinner testified. Trial counsel testified that while the Appellant maintained his innocence throughout the proceeding, the investigation did not reveal facts which would support an alibi defense. He further testified that he believed the case was "triable" because the evidence against the Appellant was circumstantial. However, because of the amount of time the Appellant was facing, over one hundred forty years, trial counsel did discuss the advantages and disadvantages of the proposed plea agreement. The Appellant testified that he was "forced" into accepting the plea agreement based upon misrepresentations by trial counsel. The post-conviction court denied relief

_____

[2]We note a different spelling of Tino "Skinard's" last name than that which appears in the indictment and at the guilty plea hearing.

by written order on April 21, 2004, finding that the Appellant had failed to demonstrate either deficient performance or prejudice. This timely appeal followed.

### Analysis

On appeal, the Appellant asserts that he was denied the effective assistance of counsel and, as a result, his nolo contendere plea was not entered knowingly and voluntarily. In order to succeed on a post-conviction claim, the Appellant bears the burden of showing, by clear and convincing evidence, the allegations set forth in his petition. Tenn. Code Ann. § 40-30-110(f) (2003). On appeal, the Appellant's claim of ineffective assistance of counsel stems from the following allegations of deficient performance: (1) that trial counsel failed to file a motion to dismiss based upon an unreasonable delay in the prosecution; (2) that trial counsel pressured the Appellant to accept the plea agreement by promising that the parole board would look more favorably upon a nolo contendere plea; (3) that trial counsel failed to investigate the case by not seeking an interview with a co-defendant; and (4) that trial counsel failed to inform the Appellant of the "physical facts" rule which would have excluded the potentially damaging testimony of a jailhouse snitch.

In evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S. Ct. 160, 164 (1970). In making this determination, the reviewing court must look to the totality of the circumstances. *State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995); *see also Chamberlain v. State*, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). Indeed, a

> court charged with determining whether . . . pleas were 'voluntary' and 'intelligent' must look to various circumstantial factors, such as the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993). Once a guilty plea has been entered, effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. In this respect, such claims of ineffective assistance necessarily implicate that guilty pleas be voluntarily and intelligently made. *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S. Ct. 366, 369 (1985) (citing *North Carolina v. Alford*, 400 U.S. at 31, 91 S. Ct. at 164).

To succeed in a challenge for ineffective assistance of counsel, the Appellant must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984), the Appellant must establish (1)

deficient representation and (2) prejudice resulting from the deficiency. In the context of a guilty plea, to satisfy the second prong of *Strickland*, the Appellant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill,* 474 U.S. at 59, 106 S. Ct. at 370; *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997). The petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceeding. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). This deference to the tactical decisions of trial counsel is dependant upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

The issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). "A trial court's *findings of fact* underlying a claim of ineffective assistance of counsel are reviewed on appeal under a *de novo* standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d)); *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997). However, *conclusions of law* are reviewed under a purely *de novo* standard, with no presumption of correctness. *Fields*, 40 S.W.3d at 458.

## I. Unreasonable Delay

First, the Appellant contends that trial counsel was ineffective for failing to file a motion to dismiss based upon unreasonable delay in the commencement of the prosecution. While the crimes were committed in August and September of 1997, the Appellant was not indicted until over a year later in November 1998. The Appellant asserts that this delay violated his due process rights and that prejudice inured because potential alibi witnesses were unable to provide exact details with regard to the Appellant's whereabouts on the day of the crime due to the delay. Trial counsel testified at the hearing that he "probably thought about [filing such a motion] . . . , but based on the case law, there was no chance of winning a motion like that." Thus, with regard to the alleged deficiency, the Appellant was required to show by clear and convincing evidence (1) that a motion to dismiss would have been granted and (2) that there was a reasonable probability that the proceedings would have concluded differently if counsel had performed as suggested. As concluded below, the Appellant has failed to establish either of these factors. Clearly, trial counsel cannot be considered deficient for failing to make or pursue a motion that would have been meritless.

In Tennessee, the law is well settled that while delay between the commission of an offense and the commencement of adversarial proceedings does not violate an accused's constitutional right to a speedy trial, an unreasonable delay between the commission of the offense and the commencement of the prosecution may violate the constitutional right to due process. *State v. Carico*, 968 S.W.2d 280, 284 (Tenn. 1998) (citing *State v. Gray*, 917 S.W.2d 668, 671 (Tenn. 1996)). In order to be entitled to relief based upon the delay between the offense and the initiation of adversarial proceedings, the accused must show that "'(a) there was a delay, (b) the accused

sustained actual prejudice as a direct and proximate result of the delay, and (c) the State caused the delay in order to gain tactical advantage over or to harass the accused.'" *State v. Utley*, 956 S.W.2d 489, 495 (Tenn. 1997) (quoting *State v. Dykes*, 803 S.W.2d 250, 255 (Tenn. Crim. App. 1990)). In *Gray*, our supreme court articulated a second test, requiring consideration of only the length of the delay, the reason for the delay, and the degree of prejudice to the accused, but limited its application to cases in which the State is unaware of the commission of the crime during the delay. *Id.* However, the court reaffirmed that in all other cases, the *Dykes* test remained controlling. *Id.*

Clearly, in this case the State was aware of the commission of the crimes when they occurred; however, a review of the determinative factors does not show a violation of the Appellant's right to due process. As trial counsel stated at the post-conviction hearing, a delay of fourteen months in the commencement of prosecution is not a significant one. *Cf. Carico*, 968 S.W.2d at 284 (delay of seven years); *Utley*, 956 S.W.2d at 496 (delay of five years); *Gray*, 917 S.W.2d at 673 (delay of forty-two years); *Ray Charles Gasaway v. State*, No. M2000-00991-CCA-R3-PC (Tenn. Crim. App. at Nashville, Mar. 29, 2001) (delay of four years). Some evidence was presented, mainly through the testimony of the Appellant, that because of the delay, witnesses were unable to provide him with an alibi; however, the Appellant failed to offer any specific testimony at the hearing that had there been no delay, witnesses would have been able to substantiate his alibi. Thus, we find that the Appellant has also failed to establish prejudice. More importantly, the Appellant has offered no evidence that the State caused the delay to gain a tactical advantage. Though not entirely clear, it appears from the record that the delay in commencement of prosecution against the Appellant was caused by a witness' failure to initially identify the Appellant. Accordingly, we find that the Appellant has failed to establish either deficient performance or prejudice as a result of trial counsel's failure to pursue this issue.

## II. Promises Regarding the Parole Board

Next, the Appellant contends that trial counsel "pressured" him to accept the plea agreement by giving him erroneous advise regarding his treatment by the parole board if he accepted the plea agreement. At the post-conviction hearing, the Appellant testified that trial counsel informed him that the board would act more favorably with regard to parole if the Appellant pled nolo contendere. Trial counsel was never questioned at the hearing regarding any statement he made to the Appellant concerning potential parole eligibility. Moreover, the post-conviction court made no finding on this issue in its final order.

As the State correctly asserts, the Appellant failed to include this issue in his petition for post-conviction relief or any of the subsequent amendments. Accordingly, the issue was never before the post-conviction court, and no findings were made by the court. Issues not raised in the post-conviction petition cannot be raised for the first time on appeal. *Jimmy Earl Lofton v. State*, No. 02C01-9603-CR-00073 (Tenn. Crim. App. at Jackson, Mar. 7, 1997); *see also Cauthern v. State*, 145 S.W.3d 571, 599 (Tenn. Crim. App. 2004) (an issue raised for the first time on appeal is waived). A post-conviction petition "must necessarily rest upon and be determined by the factual allegations

it contains." *Long v. State*, 510 S.W.2d 83, 85 (Tenn. Crim. App. 1974). Therefore, this issue is waived.

### III. Failure to Investigate/Interview the Co-defendant

Third, the Appellant asserts that trial counsel was ineffective by failing to seek an interview with co-defendant Tino Skinner. At the post-conviction hearing, Skinner, who was indicted for the same crimes as the Appellant, testified that the Appellant was not present or involved in any of the crimes as alleged. The record reflects that both the Appellant and Skinner entered their pleas simultaneously, and at no time did Skinner dispute the stipulated facts and inform the court that the Appellant was innocent. With regard to his prior silence, Skinner testified that he informed his attorney regarding the Appellant's innocence, but she advised him to say nothing.

Trial counsel testified at the post-conviction hearing that he attempted to contact Skinner to determine if he had information which would be beneficial to the Appellant. However, he was unable to do so because Skinner was represented by counsel. Although Skinner professed at the evidentiary hearing that the Appellant was not involved in the crime for which he was convicted, there is nothing in the record which suggests that this was Skinner's position prior to the Appellant's nolo contendere plea. Indeed, Skinner testified that he was told by his attorney to say nothing about the Appellant's innocence. Furthermore, trial counsel testified that he was unable to consult with Skinner because Skinner was represented by counsel. We review trial counsel's conduct not on the facts as they exist today, rather, upon the facts as they existed at the time of counsel's conduct during representation. *Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066. Accordingly, we apply the rule of contemporary assessment of counsel's conduct, *i.e.*, that counsel may only be charged for a failure to assess or investigate that which was available to counsel at the time. *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S. Ct. 838, 844 (1993). Because we conclude that Skinner's revelations at the post-conviction hearing were not available to trial counsel during his representation of the Appellant, we likewise conclude that trial counsel cannot be found deficient for failure to obtain unavailable facts.

### IV. Physical Facts Rule

Last, the Appellant asserts that trial counsel's failure to inform him that operation of the physical facts rule would exclude the potentially damaging testimony of James Smith, a jailhouse snitch, constituted deficient performance. According to the Appellant's testimony, Smith had given a statement to police claiming that the Appellant told him that the gun used in the September 1997 crimes was stolen that same night. However, the evidence established that the same gun was used in the August crimes. Thus, the Appellant asserts that Smith's testimony would violate the physical facts rule and would have been excluded. Trial counsel acknowledged that he did not inform the Appellant regarding operation of this specific rule. The post-conviction found that it was "insignificant that the [Appellant] was not knowledgeable as to the . . . rule. It would be counsel's duty to consider the feasibility of implementation of certain defenses, in conjunction with the available evidence." We agree.

Nonetheless, we note that the rule would not be applicable upon the facts before us. The physical facts rule is the "accepted proposition that in cases where the testimony of a witness is entirely irreconcilable with the physical evidence, the testimony can be disregarded." *State v. Hornsby*, 858 S.W.2d 892, 894 (Tenn. 1993). However, our supreme court cautioned that the power to disregard testimony should be used sparingly, "[o]nly when the testimony is inherently improbable and impossible of belief." *Id*. at 895. It instructed that the matter should be left to the jury when the testimony is capable of different interpretations because it is within the province of the jury to decide whether there are inconsistencies in testimony, to reconcile conflicts in testimony, and to determine the credibility of witnesses. *Id*. Additionally, in order for the rule to apply, the "facts used to negate the testimony must be 'well-established and universally recognized physical laws.'" *Id*. (quoting *Nelms v. Tennessee Farmers Mut. Ins. Co.*, 613 S.W.2d 481, 483 (Tenn. App. 1978)).

First, the Appellant's claim must fail because he has failed to present any evidence, other than his own self-serving testimony, that the rule would be applicable to the facts of the case. Smith did not testify at the post-conviction hearing. Thus, to apply the rule based upon only what the Appellant said Smith would testify to would require speculation. It was the Appellant's burden to present supporting proof at the post-conviction hearing, and he failed to do so. *See Black*, 794 S.W.2d at 757. Nonetheless, even assuming that Smith had testified as the Appellant asserted he would, we do not find the testimony in question regarding when the gun was stolen sufficient to invoke application of the physical facts rule. According to the Appellant, Smith's testimony only relates to what he was told by the Appellant, something clearly not subject to the physical facts rule as that testimony is not irreconcilable with any physical evidence. Rather, it would require a credibility determination by the jury as to whether they believed that the Appellant had confessed his involvement in the crimes to Smith. This issue is without merit.

We find no evidence in the record to support the Appellant's assertion that he would have proceeded to trial absent trial counsel's alleged errors. No deficient performance has been established. The post-conviction court found that trial counsel had adequately investigated the case, conferred with the Appellant, and advised him of the advantages and disadvantages of accepting the plea agreement. We note that the Appellant was facing a possible sentence of over one hundred forty years had he proceeded to trial, instead of the twenty-year sentence he received for his involvement in a violent crime spree. Moreover, we note that the Appellant was fully advised of his rights before accepting the plea agreement and stated that he was satisfied with trial counsel's performance. Accordingly, we find that the Appellant has failed to establish that his plea was not entered knowingly and voluntarily.

**CONCLUSION**

Based upon the foregoing, we affirm the denial of the Appellant's petition for post-conviction relief by the Davidson County Criminal Court.

_____
DAVID G. HAYES, JUDGE