IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 17, 2005 Session

## ANGELA McDANIEL v. CAROLINA NATIONAL TRANSPORT, ET AL.

**Appeal from the Circuit Court for Knox County**
**No. 2-176-03     Harold Wimberly, Judge**

_____

**No. E2005-00541-COA-R3-CV  - FILED JANUARY 23, 2006**

_____

In this action arising from a vehicular accident, the issues presented are whether the trial court erred in allowing into evidence deposition testimony of a Defendant pursuant to Tenn. R. Civ. P. 32.01, and whether the amount of the jury verdict was supported by material evidence. We hold the trial court did not err in its discretionary decision to admit the deposition testimony, and that there is material evidence supporting the duly approved jury verdict. Consequently, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed;**
**Case Remanded**

SHARON G. LEE, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR. and D. MICHAEL SWINEY, JJ., joined.

Dallas T. Reynolds, III, Knoxville, Tennessee, for the Appellants, Carolina National Transport and Robert K. Corprew.

W. Zane Daniel, Knoxville, Tennessee, for the Appellee, Angela McDaniel.

### OPINION

#### I. Factual and Procedural Background

On March 21, 2002, Angela McDaniel's vehicle was rear-ended by a tractor-trailer truck driven by Robert K. Corprew on Interstate 40 in or near downtown Knoxville. Mr. Corprew's truck was rear-ended by another tractor-trailer, driven by Reginald Davis, in the accident. On March 20, 2003, Ms. McDaniel brought this action for injuries sustained in the accident against Mr. Corprew, Carolina National Transport (the alleged owner of Mr. Corprew's truck and the company for which Mr. Corprew was alleged to be acting as agent or employee), Mr. Davis, and National Carriers, Inc. (the company for which Mr. Davis was alleged to be acting as agent or employee).

Carolina National and National Carriers and their respective drivers answered, each Defendant alleging, among other things, the fault of the other in the accident. Carolina National and Mr. Corprew filed a cross-claim against National Carriers and Mr. Davis. All parties stipulated that Ms. McDaniel was without fault in the accident. The case was tried before a jury on November 2 and 3, 2005.

The jury returned a verdict finding the Defendants each 50% at fault and awarding damages to Ms. McDaniel in the amount of $200,000. The trial court approved the verdict. Carolina National and Mr. Corprew then filed a motion for a new trial or, in the alternative, a remittitur, which was denied by the trial court.

## II. Issues Presented

Carolina National and Mr. Corprew appeal, raising the following issues:

(1) Whether the trial court erred in allowing National Carriers and Mr. Davis to introduce the deposition testimony of Mr. Davis at trial, pursuant to Tenn. R. Civ. P. 32.01.

(2) Whether the trial court erred in refusing to suggest a remittitur of the jury verdict or grant a new trial.

National Carriers and Mr. Davis have paid their portion of the judgment to Ms. McDaniel, and they are not involved in this appeal
.

## III. Admission of Deposition Testimony

We first address the contention that the trial court erred in allowing the deposition testimony of Mr. Davis. Issues regarding whether a trial court has correctly construed and applied the governing Tennessee Rules of Civil Procedure and Tennessee Rules of Evidence in making an admissibility determination address themselves to the trial court's discretion, and we review such issues under the "abuse of discretion" standard. *DeLapp v. Pratt*, 152 S.W.3d 530, 538 (Tenn. Ct. App. 2004). "[T]rial courts are accorded a wide degree of latitude in their determination of whether to admit or exclude evidence, even if such evidence would be relevant." *Id; Dickey v. McCord,* 63 S.W.3d 714, 723 (Tenn. Ct. App. 2001). As our Supreme Court noted in *Eldridge v. Eldridge,*

> Under the abuse of discretion standard, a trial court's ruling "will be upheld so long as reasonable minds can disagree as to propriety of the decision made." *State v. Scott,* 33 S.W.3d 746, 752 (Tenn.2000); *State v. Gilliland,* 22 S.W.3d 266, 273 (Tenn.2000). A trial court abuses its discretion only when it "applies an incorrect legal standard, or reaches a decision which is against logic or reasoning that causes an injustice to the party complaining." *State v. Shirley,* 6 S.W.3d 243, 247 (Tenn.1999). The abuse of discretion standard does not permit

the appellate court to substitute its judgment for that of the trial court. *Myint v. Allstate Ins. Co.,* 970 S.W.2d 920, 927 (Tenn.1998).

*Eldridge v. Eldridge,* 42 S.W.3d 82, 85 (Tenn. 2001)(internal brackets omitted).

Tennessee Rule of Civil Procedure 32.01, the applicable and governing rule regarding this issue, states as follows in relevant part:

> At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions:
>
> \* \* \*
>
> **(2)** *The deposition of a party* or of anyone who at the time of taking the deposition was an officer, director, or managing agent, or a person designated under Rule 30.02(6) or 31.01 to testify on behalf of a public or private corporation, partnership or association, governmental agency or individual proprietorship which is a party *may be used by an adverse party for any purpose.*
>
> \* \* \*
>
> **(4)** If only part of a deposition is offered in evidence by a party, an adverse party may require the introduction at that time of any other part which ought in fairness to be considered contemporaneously with it. [Emphasis added].

In their brief, Carolina Transport and Mr. Corprew argue that "the day before trial, counsel for National [Carriers] and Mr. Davis advised counsel for Carolina and Corprew that he intended to present the testimony of Davis via discovery deposition because he was unable to obtain Mr. Davis's presence at trial." The morning of trial, Carolina Transport and Mr. Corprew moved *in limine* to exclude the deposition of Mr. Davis. There is no transcript of the presentation of the motion *in limine*, nor of argument of counsel regarding the motion, nor of the trial court's comments, if any, in ruling on the motion. It is apparent, however, that the trial court denied the motion.

In the presentation of her case in chief, Ms. McDaniel introduced a portion of Mr. Davis's deposition. In the presentation of their case in chief, Carolina National and Mr. Corprew also presented certain excerpts from Mr. Davis's deposition, after which counsel for National Carriers and Mr. Davis presented other portions of the deposition which he argued should in fairness be considered contemporaneously with the portions presented by Carolina National and Mr. Corprew.

After the close of proof, counsel for Carolina National and Mr. Corprew made an offer of proof regarding the motions *in limine* made prior to trial, stating as follows in relevant part:

Then last but not least, Defendant Corprew and Carolina National moved prior to trial to bar admission of [the] deposition of Mr. Davis. Defense argued that it was in violation of [Tenn. R. Civ. P.] 32.01. The witness was not unavailable as contemplated by the Rule, because his absence, though he may be, according to counsel, more than 100 miles away in Texas somewhere, that's of his own choosing. So he in essence procured his own absence, and he shouldn't be able to take advantage of the exception regarding unavailability.

THE COURT: Then we noted since plaintiff's counsel intended to read portions of the deposition that that same Rule also allows the other side to read other portions to explain those portions, and that's what we wound up doing, in the Court's opinion anyway.

We initially note that Tenn. R. Civ. P. 32.01(2) provides that "[t]he deposition of a party...may be used by an adverse party for any purpose." *See Nelms v. Tennessee Farmers Mut. Ins. Co.,* 613 S.W.2d 481, 483-84 (Tenn. Ct. App. 1978); *Ball v. Overton Square, Inc.,* 731 S.W.2d 536, 539 (Tenn. Ct. App. 1987); *McLemore v. Powell*, 968 S.W.2d 799, 802 (Tenn. Ct. App. 1997); *Dargi v. Terminix Int'l. Co.,* 23 S.W.3d 342, 345 (Tenn. Ct. App. 2000). It is apparent from the trial court's comments on the record that at some point during the motion *in limine* hearing, counsel for Ms. McDaniel informed the court that he intended to read into evidence certain portions of Mr. Davis' deposition. At the hearing of Carolina National's motion for a new trial or remittitur, the trial court stated, "clearly the plaintiff could read portions of this discovery deposition. Having done that, the Court determined that the other portions that were read by the other parties including this defendant [National Transport] could appropriately be read in this trial."

The trial court held the "rule of completeness" found at subsection (4) of Rule 32.01 to be applicable under these circumstances. This rule provides that "[i]f only part of a deposition is offered in evidence by a party, an adverse party may require the introduction at that time of any other part which ought in fairness to be considered contemporaneously with it." Tenn. R. Civ. P. 32.01(4). Once Ms. McDaniel introduced parts of the Davis deposition, either Defendant could have required other parts of the deposition that ought in fairness to be considered simultaneously with the earlier parts. Likewise, once Carolina National and Mr. Corprew introduced parts of the deposition, the trial court properly allowed National Transport and Mr. Davis, adverse parties to Carolina National and Mr. Corprew, to read other parts of the deposition, in keeping with the rule.

It is therefore clear from the transcript and the trial court's comments that it properly allowed counsel for National Transport and Mr. Davis to read into evidence certain portions of Mr. Davis' deposition pursuant to the rule of completeness. Although Carolina National argues in its brief that the trial court erred in allowing National Carriers and Mr. Davis "to utilize the entire discovery deposition of Davis during the trial," only certain portions of it were read into evidence. Further, although Carolina National argues that the trial court wrongly found Mr. Davis to be an "unavailable" witness pursuant to Tenn. R. Civ. P. 32.01(3), there is no indication in the record that

the trial court made such a finding, or that it based its ruling upon subsection (3) of Rule 32.01. We do not find that the trial court abused its discretion in admitting the deposition testimony under Tenn. R. Civ. P. 32.01.

### IV. Jury Verdict

We now turn to the argument that the trial court erred in refusing to suggest a remittitur or grant a new trial. Carolina National and Mr. Corprew assert that the $200,000 verdict was so excessive as to be beyond the upper limit of the range of reasonableness in this case.

As already noted, this case was tried before and decided by a jury. A finding of fact made by a jury in a civil case will be set aside by this court "only if there is no material evidence to support the verdict." Tenn. R. App. P. 13(d). As regards the issue of remittitur, our Supreme Court has stated as follows:

> when the question of remittitur is raised, the Court of Appeals has the duty to review the proof of damages and the authority to reduce an excessive award. But when the trial judge has approved the verdict, the review in the Court of Appeals is subject to the rule that if there is any material evidence to support the award, it should not be disturbed.

*Foster v. Amcon Int'l, Inc.,* 621 S.W.2d 142, 146 (Tenn. 1981)(quoting *Ellis v. White Freightliner Corp.,* 603 S.W.2d 125, 129 (Tenn. 1980)). This deferential standard serves to preserve the principle that "the amount of compensation in a personal injury case is primarily for the jury, and that next to the jury, the most competent person to pass on the matter is the trial judge who presided at the trial and heard the evidence." *Foster,* 621 S.W.2d at 143-44. Thus, to safeguard the constitutional right to trial by jury, we are required to "take the strongest legitimate view of all the evidence to uphold the verdict, to assume the truth of all that tends to support it, to discard all to the contrary, and to allow all reasonable inferences to sustain the verdict." *Poole v. The Kroger Co.,* 604 S.W.2d 52, 54 (Tenn. 1980)(internal quotation marks omitted).

Our review of the record supports the conclusion that there is material evidence supporting the $200,000 award to Ms. McDaniel. Ms. McDaniel's car, struck in the rear by a tractor-trailer truck on the interstate, sustained some $7,000 in damage. She went to the emergency room, where she was treated for a moderately severe cervical strain or whiplash injury. She presented the testimony of two treating physicians. Dr. Fred Hurst, who treated her, described his treatment at length and testified that some ten months after the accident, "my impression was that of bone pain, insomnia, and depression over chronic pain syndrome, having been hurting now for ten months, cervical strain, lumbosacral strain, degenerative cervical bone disease."

Dr. Hurst testified that the medications prescribed for her injuries caused Ms. McDaniel to suffer stomach and abdominal pain, which required him to prescribe further medication for her. Dr. Hurst further testified as follows:

> Q: Do you have an opinion, in your opinion, as to how much impairment or disability she has as a result of this?
>
> A: Well, because of the added effect on her nerves and on her gastrointestinal system, gastritis, because she will likely have to continue to take anti-inflammatory medications, and those medications do irritate one's stomach, and because of her inability to sleep from time to time because of the pain, I determined that in my opinion that she ought to have about 25 percent disability.
>
> Q: Dr. Hurst, what do you think her prognosis for the future is as far as what she is going to be able to do or how she's going to have to live with this pain? Is there anything she can do for it? Is there any kind of operation she can have?
>
> A: Well, two and a half years after the wreck – actually more than two and a half years – she still has the pain, and the pain I cannot see getting any better. So what is of concern to me is that she hasn't really improved with all that medicine and orthopedic surgery has had to offer her. And I think that this is – of course, I don't have a crystal ball. None of us do. But I think this is a chronic pain syndrome that this woman unfortunately will suffer for an undetermined length of time, and Lord only knows for how long.

Ms. McDaniel was 39 years old at the time of the trial. She testified that she had worked as a manager for Levi Strauss "until Levi's left town" in 1998. She was earning approximately $54,000 per year in her position with Levi Strauss. After the company closed and left the Knoxville area, Ms. McDaniel went to school and retrained to be an independent insurance agent, earned her license, and began training with a company to do insurance sales. In January of 2002, she was hired by Bankers Life & Casualty as an independent insurance agent.

Ms. McDaniel began selling insurance for Bankers Life & Casualty in early February of 2002. She testified that in the seven weeks between that time and the accident, she earned a little over $8,000, working on pure commission. She presented the testimony of Roy Steve Ruth, her trainer and supervisor at Bankers, who stated as follows:

> Q: After she came to work there, tell this Court and jury what type of worker she was and how she worked before.

A: Well, she started off very, very well. When she came out of her training, that's actually. . .what I call hands on, you know, you go out in the field and help them produce. And she was really productive, doing real well, on the road to being a real good, successful agent.

＊             ＊             ＊

Q: And after that [the accident] tell us what difference you noticed, Mr. Ruth, after that happened.

A: Well, when she was able to come back to work, she, you know – I'm talking about coming back and try to come back to work. She was very uncomfortable, couldn't sit. This job, it's not really what you call physically [sic] labor, but, you know, you do a lot of bending over, talking on the phone, raising your arm up and down, constantly moving, and talking for several hours at a time trying to set appointments. So outside of that, it's strenuous. I noticed her stress level was really high. She was in a lot of pain. She didn't feel well. . . .She got to the point that she just wasn't comfortable working. She was crying, upset, felt bad, looked bad. She really did.

＊             ＊             ＊

Q: You know she worked there up until after this accident happened. But did they ultimately have to let her go?

A: Yeah. Her employment just went downhill because she could not perform. I mean she really couldn't. She couldn't do the tasks.

＊             ＊             ＊

Q: And was she, in your opinion, going to be a very good worker or going to be –

A: Yeah. You only have about one out of 100 successful agents. You'll run through agents, you know, one really successful. And she was on the road to being that one. She was doing well.

After her employment with Bankers was terminated, Ms. McDaniel attempted to work independently in the insurance sales field. She earned only approximately $8,679.19 in 2003 in this capacity.

Ms. McDaniel had no history of back or neck injury prior to the accident. After the accident, she was unable to participate in activities she had previously enjoyed, such as water skiing, working out at the gym, and gardening. Her medical bills for injuries resulting from the accident totaled approximately $16,249.31.

Practically none of the above-described evidence was challenged or contradicted by either Defendant at trial. Based upon the foregoing and the record as a whole, we hold there is material evidence supporting the duly approved jury verdict, and that the amount of $200,000 is not beyond the upper limit of the range of reasonableness when considering the injuries and pecuniary losses suffered by Ms. McDaniel resulting from the accident.

We therefore affirm the jury verdict and the judgment of the trial court in all respects. Costs on appeal are assessed to the Appellants, Carolina National Transport and Robert K. Corprew.

_____

SHARON G. LEE, JUDGE