**Paula B. BOWMAN**

v.

**STATE of Tennessee.**

Court of Appeals of Tennessee, at Nashville.

July 15, 2005 Session.

March 24, 2006.

Permission to Appeal Denied by Supreme Court Oct. 16, 2006.

Joseph Howell Johnston, Nashville, Tennessee, for the appellant, Paula B. Bowman.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; and Dawn Jordan, Assistant Attorney General, for the appellee, State of Tennessee.

**OPINION**

WILLIAM C. KOCH, JR., P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN and FRANK G. CLEMENT, JR., JJ., joined.

This appeal involves a visitor who was injured when she slipped and fell in an icy parking lot at a State office building in Nashville. The visitor filed a claim with the Tennessee Claims Commission pursuant to Tenn.Code Ann. § 9–8–307(a)(1)(C) (Supp.2005) asserting that the State had negligently failed to monitor the local weather forecasts and to initiate timely protective measures to prevent or to remove ice from the parking lot. Following an en banc hearing, the Commission found that the State did not have sufficient notice of the icy parking lot and had no duty to constantly monitor weather conditions. The Commission dismissed the visitor's claim, and the visitor appealed. We affirm the Commission's order dismissing the claim.

**I.**

An unusual winter storm descended on Nashville sometime during the late evening hours of Sunday, March 14, 1999 and the early morning hours of Monday, March 15, 1999. It left frozen precipitation, particularly ice, in its wake. As a result of this storm, the roads, driveways, and parking lots at the State's R.S. Gass Office Complex on Hart Lane were covered with ice by early Monday morning.

The weather forecasts issued on Sunday predicted a possibility of rain and possible light snow for late Sunday and Monday. Later, on Sunday evening, the forecast changed to a prediction of occasional snow possibly mixed with sleet. Based on these forecasts, Cass Satterfield, the administrator of the R.S. Gass Office Complex, decided against commencing the snow or ice removal procedures at the complex on Sunday evening. When Mr. Satterfield awoke at approximately 5:30 a.m. on Monday, March 15, 1999, he was surprised to see the amount of frozen precipitation on

the ground. He did not immediately call in his employees to remove the ice because he was concerned about their ability to travel on the icy roads. He also knew that one of his employees who regularly started work at 7:00 a.m. would begin applying salt to the roadways and parking lots at the complex as soon as he arrived.

Paula Bowman, a Ph.D. level chemist, was seeking a Chemist I position with the Division of Laboratory Services of the Tennessee Department of Health. Her job interview was scheduled for 9:00 a.m. on Monday, March 15, 1999. By the time she left home for her interview, the precipitation had stopped, but the skies remained overcast. When Dr. Bowman arrived at the R.S. Gass Office Complex approximately twenty minutes before the interview, she noticed that the driveways and the parking lots were covered with ice.[1] After parking her truck, Dr. Bowman began walking toward the nearest office building. However, she fell on the ice a short distance from her truck and sustained a head injury.[2]

On June 28, 2000, Dr. Bowman filed a claim with the Tennessee Claims Commission seeking to recover damages in accordance with Tenn.Code Ann. § 9–8–307(a)(1)(C) (2005).[3] She alleged that the State knew or should have known of the dangerous icy condition of the parking lot and should have taken steps to remove the ice or to otherwise improve the traction for persons in the parking lot. Following a hearing in May 2002, a claims commission-er dismissed Dr. Bowman's claim after finding that the State did not create or maintain a dangerous condition on its property, that the State did not have sufficient notice of the parking lot's icy conditions to enable it to remove the ice, and that Dr. Bowman's negligence contributed at least fifty percent to her injuries.

Dr. Bowman, who by this time was representing herself, filed a request for an en banc hearing by all the members of the Tennessee Claims Commission. On September 13, 2002, the Commission granted Dr. Bowman's request for an en banc hearing and summarily affirmed the single claims commissioner's decision. On appeal, this court vacated the Commission's September 13, 2002 order because the Commission had failed to give Dr. Bowman the notice required by Tenn. Comp. R. & Regs. 0310–1–1–.03(4) (2001) and remanded the case for another en banc hearing. *Bowman v. State,* No. M2002–02616–COA–R3–CV, 2003 WL 22490193, at *1 (Tenn.Ct.App. Nov.3, 2003) (No Tenn. R.App. P. 11 application filed).

The Commission conducted an en banc hearing on March 1, 2004. Dr. Bowman, continuing to represent herself, argued that the snow and ice removal policies applicable to the R.S. Gass Office Complex created a duty on the maintenance staff to closely monitor weather forecasts and conditions at all times and that the maintenance staff was negligent because it failed to monitor the forecasts in the newspaper,

1. The employees were still salting the driveways when Dr. Bowman arrived. They did not finish the driveways and begin working on the parking lots until between 9:00 and 10:00 a.m.

2. The sun appeared later in the morning after Dr. Bowman fell, and the ice on the parking lot was gone by noon.

3. Tenn.Code Ann. § 9–8–307(a)(1)(C) provides that an injured party may recover money damages against the State for "[n]egligently created or maintained dangerous conditions on state controlled real property. The claimant under this subdivision ... must establish the foreseeability of the risks and notice given to the proper state officials at a time sufficiently prior to the injury for the state to have taken appropriate measures...."

the local television stations, and the National Weather Service. She insisted that had the maintenance employees monitored the weather more closely, they would have taken more timely protective measures that would have cleared the parking lot of ice before her arrival. She also insisted that the maintenance staff's failure to act promptly to remove the ice from the parking lot was the proximate cause of her injury.

On April 28, 2004, the Commission filed an order dismissing Dr. Bowman's claim. While the Commission concluded that the ice on the parking lots at the R.S. Gass Office Complex was a dangerous condition, it found that the State lacked notice of this condition in sufficient time to remedy it and thereby to prevent Dr. Bowman's injury. The Commission specifically found that the maintenance staff did not have a duty to constantly monitor the weather forecasts for ice or snow or to keep the premises free from ice at all times. The Commission also concluded that Dr. Bowman had failed to prove that the maintenance crew's failure to salt the parking lot earlier was a proximate cause of her injury because she failed to present evidence that the ice on the parking lot would have melted before she arrived had salt been placed on the parking lot earlier. Dr. Bowman has again appealed to this court.

## II.

### THE STANDARD OF REVIEW

▮▮▮ Appeals from decisions by the Commission sitting en banc are governed by the Tennessee Rules of Appellate Procedure. Tenn.Code Ann. § 9–8–403(a)(1) (Supp.2005). Accordingly, because the Claims Commission hears cases without a jury, this court reviews the Commission's factual findings and legal conclusions using the now familiar standard in Tenn. R.App. P. 13(d). Thus, we will review the Com-

mission's findings of fact de novo with a presumption that they are correct unless the evidence preponderates otherwise. *Beare Co. v. State,* 814 S.W.2d 715, 717 (Tenn.1991); *Dobson v. State,* 23 S.W.3d 324, 328–29 (Tenn.Ct.App.1999); *Sanders v. State,* 783 S.W.2d 948, 951 (Tenn.Ct. App.1989). The Commission's legal conclusions, however, have no similar presumption of correctness. *Turner v. State,* 184 S.W.3d 701 (Tenn.Ct.App., 2005), *perm. app. denied* (Tenn. Oct. 24, 2005); *Crew One Productions, Inc. v. State,* 149 S.W.3d 89, 92 (Tenn.Ct.App.2004); *Belcher v. State,* No. E2003–00642–COA–R3–CV, 2003 WL 22794479, at *4 (Tenn.Ct.App. Nov.25, 2003), *perm. app. denied* (Tenn. May 10, 2004).

## III.

### THE STATE'S DUTY TO REMOVE NATURAL ACCUMULATIONS OF SNOW OR ICE ON STATE PROPERTY

Dr. Bowman first asserts that the Commission erred by deciding that the State's duty to maintain reasonably safe premises did not include an obligation to monitor the weather forecasts for the possibility of an accumulation of ice or snow. She also insists that the Commission erred by deciding that state employees did not breach their duty by failing to begin their efforts to remove the ice from the parking lot earlier than they did. We have determined that both of the Commission's conclusions are correct.

### A.

▮▮▮ The State is not the insurer of the safety of persons who come onto its property. *Byrd v. State,* 905 S.W.2d 195, 197 (Tenn.Ct.App.1995). It is, however, liable to these persons to the same extent that private owners and occupiers of property are liable, *Hames v. State,* 808 S.W.2d 41,

44 (Tenn.1991); *Sanders v. State*, 783 S.W.2d 948, 951 (Tenn.Ct.App.1989), because Tenn.Code Ann. § 9–8–307(a)(1)(C) has imposed this common-law liability on the State. *Parent v. State*, 991 S.W.2d 240, 242 (Tenn.1999).

■ Based on Tenn.Code Ann. § 9–8–307(a)(1)(C), the State, like any private property owner, has the duty to use reasonable care to protect persons on its property from unreasonable risks of harm. *Rice v. Sabir*, 979 S.W.2d 305, 308 (Tenn. 1998); *Morgan v. State*, No. M2002–02496–COA–R3–CV, 2004 WL 170352, at *6 (Tenn.Ct.App. Jan.27, 2004) (No Tenn. R.App. P. 11 application filed). This duty includes maintaining the premises in a reasonably safe condition either by removing or repairing potentially dangerous conditions or by helping persons avoid injury by warning them of conditions that cannot, as a practical matter, be removed or repaired. *Blair v. Campbell*, 924 S.W.2d 75, 76 (Tenn.1996); *Plunk v. Nat'l Health Investors, Inc.*, 92 S.W.3d 409, 413 (Tenn.Ct. App.2002).

■ The existence of a dangerous condition alone is insufficient to give rise to liability "unless it is shown to be of such a character or of such duration that the jury may reasonably conclude that due care would have discovered it." *Rice v. Sabir*, 979 S.W.2d at 309. Thus, a plaintiff in a premises liability case must generally prove that the condition existed for such a length of time that the property owner knew, or in the exercise of ordinary care should have known, of its existence. *Psillas v. Home Depot, U.S.A., Inc.*, 66 S.W.3d 860, 865 (Tenn.Ct.App.2001). In the language of Tenn.Code Ann. § 9–8–307(a)(1)(C), the claimant must establish that the proper state officials had notice of the dangerous condition "at a time sufficiently prior to the injury."

**B.**

■ Dangerous conditions caused by the natural accumulation of snow and ice are considered to be among the "normal hazards of life." *Grizzell v. Foxx*, 48 Tenn.App. 462, 467, 348 S.W.2d 815, 817 (1960) (citing *Goodman v. Corn Exchange Nat'l Bank & Trust*, 331 Pa. 587, 200 A. 642, 643 (1938)). Accordingly, the courts employ the same principles to determine the scope of a property owner's duty with regard to natural accumulations of snow and ice that they use to establish the property owner's duty with regard to other dangerous conditions.

■ Property owners cannot be held liable for failing to remove natural accumulations of snow or ice when they had no notice of the condition. Forecasts of snow or ice do not, by themselves, constitute actual or constructive notice of dangerous conditions requiring a property owner to begin taking steps either to prevent or to remove accumulations of ice or snow. *Fisher v. HBS Mgmt., Inc.*, 220 Ga.App. 752, 469 S.E.2d 885, 886 (1996); *Kenison v. Madison Indus.*, 597 So.2d 139, 143 (La. Ct.App.1992). Thus, no case has ever imposed a duty on property owners to constantly monitor weather forecasts or to take steps to prevent or forestall possible accumulations of snow or ice.

■ By the same token, property owners are not required to keep their premises free of natural accumulations of snow and ice at all times. *Howard v. FMS, Inc.*, No. 01A01–9709–CV–00479, 1998 WL 195960, at *4 (Tenn.Ct.App. Apr.24, 1998) (No Tenn. R.App. P. 11 application filed); *Grizzell v. Foxx*, 48 Tenn. App. at 467, 348 S.W.2d at 817. Instead, they are expected to take reasonable steps to remove snow and ice within a reasonable time after it has formed or accumulated. *Grizzell v. Foxx*, 48 Tenn.App. at

468, 348 S.W.2d at 817. When called upon to consider whether a property owner's efforts to remove snow and ice were reasonable, the court should consider, among other things, (1) the length of time the accumulation has been present, (2) the amount of the accumulation, (3) whether the accumulation could be, as a practical matter, removed, (4) the cost of removal, and (5) the foreseeability of injury. *Simmons v. Russell*, No. 01A01–9709–CV–00467, 1998 WL 251751, at * 3 (Tenn.Ct. App. May 20, 1998) (No Tenn. R.App. P. 11 application filed); *Mumford v. Thomas*, 603 S.W.2d 154, 156 (Tenn.Ct.App.1980).

■■■ The ice storm at issue in this case did not begin until 3:00 a.m. on the morning of March 15, 1999. The State had no duty to monitor the weather conditions during the evening hours of March 14th or the early morning hours of March 15th and likewise had no duty to initiate measures to prevent ice from forming on the parking lots at the R.S. Gass Office Complex. The State's duty extended only to removing the ice from the parking lot within a reasonable time after its formation. Under the circumstances of this case, beginning to salt the roadways and parking lots of the R.S. Gass Office Complex at 7:00 a.m. rather 5:30 a.m. was not unreasonable. Accordingly, the Commission was correct when it decided that the State's efforts to remove the ice on the parking lot at the R.S. Gass Office Complex did not breach the duty it owed to the public to maintain its premises in a reasonably safe condition.

## IV.

### DR. BOWMAN'S EFFORTS TO PROVE CAUSATION

Dr. Bowman also insists that the Commission erred by concluding that she failed to prove that the State's failure to begin salting the parking lots of the R.S. Gass Office Complex earlier caused her injury. She argues that she was unfairly prevented from presenting evidence regarding the effect of salt on the melting point of ice and that this court should take judicial notice of the substance of her testimony. We find no merit in these arguments.

Dr. Bowman represented herself at the hearing before the Commission. She did not address the effect of salt or other compounds on the melting point of ice during her testimony. Thereafter, Mr. Satterfield testified that it was his understanding that the melting process would not begin after salt had been applied to accumulated ice without some sunlight or vehicular traffic. During her cross examination of Mr. Satterfield, Dr. Bowman took issue with his observations and began making statements regarding the melting properties of salt. In response to the State's objection, the Commission instructed Dr. Bowman that she could not testify while she was cross-examining a witness. Neither party brought up the melting properties of salt again.

■■■ Dr. Bowman now insists that the Commission should have recognized her expertise as a biochemist and should have helped her qualify herself as an expert so she would have been able to present testimony regarding the melting properties of salt. While Dr. Bowman, as a pro se litigant was entitled to fair and equal treatment, *Whitaker v. Whirlpool Corp.*, 32 S.W.3d 222, 227 (Tenn.Ct.App.2000), she is not entitled to shift the burden of the litigation to the Commission or her adversary. *See Young v. Barrow*, 130 S.W.3d 59, 63 (Tenn.Ct.App.2003); *Hessmer v. Hessmer*, 138 S.W.3d 901, 904 (Tenn.Ct.App.2003). The Commission would have been treating the State unfairly had it attempted to assist Dr. Bowman in presenting her evidence. Accordingly,

Dr. Bowman's claim that the Commission should have helped her present her evidence is without merit.

▮▮▮▮ Dr. Bowman also insists that this court, applying the physical facts rule,[4] should disregard Mr. Satterfield's testimony regarding the melting properties of salt and that we should take judicial notice that salt alters the melting point of ice without sunlight or vehicular traffic. We decline to adopt Dr. Bowman's invitation for two reasons. First, Mr. Satterfield's testimony does not conflict with any physical facts in the record or with well established and universally recognized physical laws. Second, appellate courts generally do not take judicial notice of evidence that was not presented to the trial court because the trial court was not afforded an opportunity to examine and take the evidence into consideration. *Vons Companies v. Seabest Foods, Inc.*, 14 Cal.4th 434, 58 Cal.Rptr.2d 899, 926 P.2d 1085, 1090 (1996); *Van Tran v. Fiorenza*, 934 S.W.2d 740, 742 (Tex.App.1996). This case does not present extraordinary circumstances that would require us to depart from these principles.

## V.

We affirm the April 28, 2004 order dismissing Dr. Bowman's claim and remand this case to the Commission for whatever further proceedings consistent with this opinion may be required. We tax the costs of this appeal to Paula B. Bowman for which execution, if necessary, may issue.

---

4. The "physical facts rule" provides that an appellate court may disregard a witness's testimony when it is impossible to reconcile the testimony with the physical evidence or with well established and universally recognized physical laws. *State v. Hornsby*, 858 S.W.2d 892, 894 (Tenn.1993); *Nelms v. Tenn. Farmers Mut. Ins. Co.*, 613 S.W.2d 481, 483 (Tenn. Ct.App.1978).