# IN THE COURT OF APPEALS OF TENNESSEE
# AT NASHVILLE
January 27, 2016 Session

## LARRY WILLIAMS v. CITY OF JAMESTOWN, TENNESSEE

**Appeal from the Circuit Court for Fentress County**
**No. 2012CV2     John D. McAfee, Judge**

_____

**No. M2015-00322-COA-R3-CV – Filed June 23, 2016**

_____


This appeal involves a visitor to a county courthouse who slipped and fell on ice in the parking area. Because the portion of the parking area where the visitor fell was owned by the city, the visitor filed suit against the city under the Tennessee Governmental Tort Liability Act. Following a bench trial, the trial court dismissed the suit, finding that the city did not breach a duty of care to the visitor. The trial court also found that, even if there had been a breach of duty, the visitor was more than fifty percent at fault for his injuries. The visitor appeals, claiming that the trial court's written order does not accurately reflect its oral ruling, that the city breached a duty of care by creating a dangerous condition that it did not remedy in a reasonable manner and time, and that the evidence preponderates against the trial court's factual finding that he was more than fifty percent at fault. We affirm.

## Tenn. R. App. P. 3 Appeal as of Right; Judgment of Circuit Court for Fentress County Affirmed

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and RICHARD H. DINKINS, J., joined.

Kenneth S. Williams and James D. Madewell, Cookeville, Tennessee, for the appellant, Larry Williams.

Daniel Hurley Rader IV, Cookeville, Tennessee, for the appellee, City of Jamestown.

**OPINION**

**I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

In the afternoon of Thursday, January 20, 2011, snow started falling in the City of Jamestown, Tennessee. The snow continued until the early morning hours of Friday, January 21, resulting in accumulations of up to six inches. In an effort to keep roads clear, City Road Department personnel scraped and salted roads and parking lots until 10:30 p.m. on Thursday evening and returned to work as early as 5:30 a.m. the next morning to continue their work.

Overnight while the snow fell, Larry Williams worked his usual third shift at his job in Albany, Kentucky, getting off at 7:00 a.m. Friday morning. He returned to his home in Pall Mall, Tennessee, on Friday to find "[a] good six inches" of snow on the ground. After a shower and a few hours of sleep, Mr. Williams decided, despite the snow on the ground, to venture into Jamestown to pay a few bills. He left his home between noon and 1:00 p.m. After an uneventful stop at his doctor's office to pay a bill, he drove to the Fentress County Courthouse to pay his property taxes.

Arriving at the courthouse, Mr. Williams circled the building looking for a parking space. He noticed that the parking spaces fronting the east, west, and south sides of the building, where the sun was hitting the parking surface, were relatively clear of snow. The parking spaces fronting the north side of the building, which fell within the shadow of the courthouse, still had ice and snow, but Mr. Williams chose to park there because it was the only area with an open parking space.

After parking, Mr. Williams entered the courthouse and paid his property taxes. From there, Mr. Williams went to the adjoining jail to ask about visiting hours. Although the jail adjoined the courthouse, it could not be accessed by the public from inside the courthouse, so to reach the jail, Mr. Williams exited the courthouse, came down a small flight of stairs near his vehicle into the north parking area and then walked west between a rock wall that bounded the courthouse grounds and the curb stops in the parking area. Mr. Williams later described the path he took as having snow and slush deeper than his ankles and almost up to his knees, so he used the parked cars to steady himself as he walked to the jail.

Leaving the jail, Mr. Williams chose not retrace his steps to his vehicle. Instead, he decided to walk out in the parking area, between the parked vehicles and State Highway 52, which bounded the north side of the courthouse. At about the same time, the county executive was assisting an elderly woman down the small flight of stairs outside the north side of the courthouse. As Mr. Williams reached a point in the parking area directly across from the stairs, the elderly woman spoke to Mr. Williams, who turned his gaze from his feet to the woman. At that point, Mr. Williams slipped on ice and fell, severely injuring his right wrist.

2

Nearly a year later, Mr. Williams filed a Tennessee Governmental Tort Liability Act ("GTLA")[1] suit in the Circuit Court for Fentress County, Tennessee, against both Fentress County and the City of Jamestown. After determining that the parking area surrounding the courthouse up to the rock wall was City property, Mr. Williams dismissed Fentress County, and the case proceeded to trial against the City only on December 10, 2014.

At trial, Mr. Williams testified regarding the conditions the day of his fall. He acknowledged it was "a significant winter storm" and estimated that there were six inches of snow on the ground when he got to the City. He also acknowledged that, by venturing out, he was taking a serious risk. When asked if he had to go out that day, Mr. Williams testified that he did not have to go out but that he preferred to pay his bills when he received them.

The witnesses who could recall the condition of the courthouse parking areas on that Friday, January 21, 2011, testified that the parking area had been scraped. The county executive recalled that the parking area had been scraped prior to his 7:45 a.m. arrival at the courthouse; he saw balls of snow in the parking area where snow had been plowed aside. The county executive also recalled that City personnel did more work on the parking areas at 10:00 a.m. The road superintendent testified that the normal procedure would have been to double salt the courthouse parking areas and that he believed that procedure was followed on January 21, 2011. The testimony also showed that it would have been difficult to keep salt treated areas from refreezing. The city recorder logged the air temperature as twenty-four degrees at 2:00 p.m., approximately thirty minutes prior to Mr. Williams's fall.

At the conclusion of the proof, the trial court dismissed the complaint with prejudice. The court found that the City did not breach its duty of care to Mr. Williams and, even if the City had breached its duty of care, Mr. Williams was more than fifty percent at fault for his injuries. The court entered a final order on January 28, 2015.

---

[1] The GTLA defines the circumstances in which local governmental entities may be subject to suits for damages. *See* Tenn. Code Ann. § 29-20-201(a) (2012); *Hawks v. City of Westmoreland*, 960 S.W.2d 10, 14 (Tenn. 1997). Two such circumstances are for "injur[ies] caused by a defective, unsafe, or dangerous condition of any street, alley, sidewalk or highway, owned and controlled by [a] governmental entity" and for "injur[ies] caused by the dangerous or defective condition of any public building, structure, dam, reservoir or other public improvement owned and controlled by [a] governmental entity." Tenn. Code Ann. §§ 29-20-203(a), -204(a). Although Mr. Williams's complaint alleges the applicability of both circumstances, we have previously characterized a government owned and controlled parking lot as a "public improvement." *See Sears v. Metro. Nashville Airport Auth.*, No. 01A01-9703-CV-00138, 1999 WL 536341, at *4 (Tenn. Ct. App. July 27, 1999) ("[T]he parking lots at the airport, together with the traffic control devices installed in the parking lots, amount to streets, sidewalks, and public improvements owned and controlled by the Airport Authority for the purpose of Tenn. Code Ann. §§ 29-20-203(a), -204(a)."); *see also Dickerson v. Rutherford Cty.*, No. M2012-01916-COA-R3-CV, 2013 WL 1501783, at *5 (Tenn. Ct. App. Apr. 11, 2013) (citing Tenn. Code Ann. § 29-20-204 for an injury occurring in a parking lot).

On appeal, Mr. Williams raises three issues. First, Mr. Williams argues the final order does not accurately reflect the court's oral ruling. Second, Mr. Williams argues that the trial court erred in finding that the City did not breach a duty of care, and third, Mr. Williams argues that the trial court erred in finding that he was more than fifty percent at fault for his injuries.

## II. ANALYSIS

In non-jury cases, the trial court's findings of fact are presumed to be correct unless the evidence in the record preponderates against them. Tenn. R. App. P. 13(d). Evidence preponderates against a finding of fact if the evidence "support[s] another finding of fact with greater convincing effect." *Rawlings v. John Hancock Mut. Life Ins. Co.,* 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001). We review a trial court's conclusions of law de novo, with no presumption of correctness. *Kaplan v. Bugalla,* 188 S.W.3d 632, 635 (Tenn. 2006).

As an initial matter, Mr. Williams contends that we should modify our standard of review because the final order does not accurately reflect the trial court's findings of fact and conclusions of law announced on the record at the conclusion of the trial. Without revealing exactly how the final order varies from the trial court's oral findings of fact, he suggests that we should review the findings of fact contained in the final order as if they were conclusions of law, *i.e.* de novo with no presumption of correctness. Alternatively, Mr. Williams requests that we only consider the court's oral findings of fact and conclusions of law.

After making oral findings of fact and conclusions of law, the court directed counsel for the City to prepare an order that "take[s] what I said, put[s] it in paragraph form, and in an order that's logical and makes sense, so that the appellate court can review it." Counsel for the City submitted its proposed final order, and counsel for Mr. Williams submitted a competing proposed order. The court ultimately adopted the proposed order prepared by counsel for the City.

Although noting its preference for "findings of fact, conclusions of law, opinions, and orders prepared by trial judges themselves . . . [over] those prepared by counsel," our Supreme Court has acknowledged that "[t]here are . . . acceptable reasons for permitting trial courts to request the preparation of proposed findings of fact, conclusions of law, and orders." *Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 314, 316 (Tenn. 2014). Appellate courts generally approve the trial court's use of a counsel-prepared order as long as two conditions are satisfied. "First, the findings and conclusions must accurately reflect the decision of the trial court. Second, the record must not create doubt that the decision represents the trial court's own deliberations and decision." *Id.* at 316.

4

Reviewing the final order in this case, we conclude both conditions are satisfied. Despite Mr. Williams's claim to the contrary, the findings of fact and conclusions of law accurately reflect the oral statements and rulings made by the trial court. We also have no doubt that the decision was the court's own. As reflected in the final order, the court explicitly found that the City did not breach its duty of care to Mr. Williams and, even if it had, Mr. Williams was more than fifty percent at fault.

We next consider the duty the City owed to Mr. Williams and whether the evidence preponderates against the trial court's finding that there was no breach. Local governments have a duty to exercise reasonable care to protect persons on its property from unreasonable risks of harm. *See* Tenn. Code Ann. §§ 29-20-204(a) (2012); *Sears v. Metro. Nashville Airport Auth.*, No. 01A01-9703-CV-00138, 1999 WL 536341, at *4 (Tenn. Ct. App. July 27, 1999). Subsumed within the duty to exercise reasonable care is "the duty either to remove dangerous conditions on their premises or to warn persons about dangerous conditions that the owner knows or should know about." *Sears*, 1999 WL 536341, at *4. In the case of natural accumulations of snow and ice, property owners "are expected to take reasonable steps to remove snow and ice within a reasonable time after it has formed or accumulated." *Bowman v. State*, 206 S.W.3d 467, 473 (Tenn. Ct. App. 2006). We have previously held that what is reasonable depends upon, "among other things, (1) the length of time the accumulation has been present, (2) the amount of the accumulation, (3) whether the accumulation could be, as a practical matter, removed, (4) the cost of removal, and (5) the foreseeability of injury." *Id.* at 474.

The snow fall in this case began on the afternoon of Thursday, January 20, 2011, and continued through the night. At the time Mr. Williams ventured out on the afternoon of January 21, 2011, six inches of snow were on the ground in the City. The proof showed that the City had scraped the area where Mr. Williams had parked prior to 7:45 a.m. on January 21 and that City personnel had returned to work on the parking area again at 10:00 a.m. The road superintendent agreed that the City Road Department put a "high priority" on the hospital and courthouse and testified that he believed the courthouse parking areas were double salted. The testimony also showed that it would have been difficult to keep salt treated areas from refreezing because temperatures on that Friday ranged from fourteen degrees at 7:00 a.m. to twenty-four degrees just before Mr. Williams's fall.

Based on this record, the evidence does not preponderate against the trial court's finding that the City did not breach its duty of reasonable care to Mr. Williams. Mr. Williams argues that the City actually created a dangerous condition by the manner in which it scraped snow and ice from the parking areas because snow and ice were pushed between the curb stops and the rock wall bordering the courthouse grounds.[2] As a result,

---

[2] Mr. Williams's arguments seemed to be that the snow and slush he encountered between the curb stops and rock wall were an "unnatural accumulation" of snow and ice. Some jurisdictions recognize liability

Mr. Williams claims that he was forced to walk in the icy parking lot. We disagree. Some natural accumulation of snow and ice between the curb stops and the rock wall would be expected in these circumstances and conditions. The City could not have scraped between the curb stops and rock wall, and given the air temperatures and the fact that the area was in shadows, the effectiveness of salting would be minimal. As for Mr. Williams being compelled to venture out in the parking area behind the parked vehicles, Mr. Williams testified that he was able to walk to the jail between the curb stops and the rock wall, albeit by steadying himself against parked vehicles.

Mr. Williams's last assignment of error is that the trial court erred in finding him more than fifty percent at fault for his injuries. "[O]nly after the element of duty is established does the comparative fault of the plaintiff come into play." *Staples v. CBL & Associates, Inc.*, 15 S.W.3d 83, 91 (Tenn. 2000). Although the City owed a duty to Mr. Williams, because the evidence does not preponderate against the trial court's finding of no breach of duty by the City, we need not address the issue of Mr. Williams's fault.

### III. CONCLUSION

Because the City did not breach its duty of care to Mr. Williams, we affirm the judgment of the trial court dismissing the case with prejudice.

_____
W. NEAL McBRAYER, JUDGE

---

where a property owner "voluntarily undertakes the removal of snow and ice . . . [and] the removal results in an unnatural accumulation of snow or ice that causes injury to a plaintiff." *Russell v. Vill. of Lake Villa*, 782 N.E.2d 906, 909 (Ill. App. Ct. 2002); *see also McDonald v. Koger*, 150 Ohio App. 3d 191, 192, 2002-Ohio-6195 ¶ 11, 779 N.E.2d 1083, 1084. Whether the accumulation of snow and slush between the curb stops and rock wall was natural or unnatural, the accumulation did not cause Mr. Williams's fall.