IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 9, 2025 Session

## JACKIE MANSFIELD BROYLES v. CALVIN C. HERRIN, JR., INDIVIDUALLY AND D/B/A HICKORY CREEK BARBECUE ET AL.

Appeal from the Circuit Court for Warren County
No. 23-CV-1701     Larry B. Stanley, Jr., Judge

_____

### No. M2024-00592-COA-R3-CV

_____

After slipping and falling on accumulated snow and ice at a restaurant, a man filed a premises liability lawsuit against the owner of the restaurant. The trial court granted summary judgment to the owner based on its finding that the owner owed no duty to protect the man from accumulated snow and ice because the incident occurred during an ongoing winter storm. Discerning no error, we affirm the trial court's decision.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and W. NEAL MCBRAYER, J., joined.

Jerry A. Jared, Cookeville, Tennessee, for the appellant, Jackie Mansfield Broyles.

Warren M. Smith, Nashville, Tennessee, for the appellee, Calvin C. Herrin, Jr., individually and d/b/a Hickory Creek Barbecue.

**OPINION**

FACTUAL AND PROCEDURAL BACKGROUND

This appeal involves a slip and fall incident that occurred on January 6, 2022. On the morning of the incident, Jackie Mansfield Broyles accompanied his neighbor and friend, Doyle Ferrell, to the Pisgah Cemetery in White County, Tennessee to help Mr. Ferrell remove Christmas flowers from his wife's grave. The drive from Mr. Ferrell's home in McMinnville to the cemetery took approximately thirty minutes. No precipitation fell during the thirty-minute drive, and there was no accumulation of snow and ice from previous precipitation.

After spending approximately fifteen minutes at the cemetery, the men left to drive to Tractor Supply in McMinnville for Mr. Ferrell to purchase birdseed. No precipitation fell while the men were at the cemetery or during the trip from the cemetery to Tractor Supply. According to Mr. Ferrell, they arrived at Tractor Supply between 10:15 and 10:30 that morning and remained inside the store for approximately twenty to thirty minutes. Mr. Broyles estimated that they remained in the store "maybe 10 minutes possibly, not long." There is some dispute in the record regarding when precipitation began to fall, but it began to snow and sleet either when the men arrived at Tractor Supply or during the ten to thirty minutes they were in the store.

The snow and sleet continued to fall as the men left Tractor Supply, with Mr. Ferrell describing it as "coming down." Nevertheless, the men decided to drive a short distance from Tractor Supply to Hickory Creek Barbecue[1] for lunch. The precipitation continued to fall during the drive to the restaurant and, upon arriving at the restaurant at 11:10 a.m., both men observed that snow and sleet had accumulated on the parking lot, steps, and porch at the restaurant's entrance. Seeing the accumulated snow and ice, Mr. Broyles used the handrail as he climbed the steps, but he slipped and fell on a patch of ice as he stepped up onto the porch. At the time Mr. Broyles fell, the snow and sleet continued to fall.

On January 4, 2023, Mr. Broyles filed a complaint against Calvin C. Harris, Jr., individually and d/b/a Hickory Creek Barbecue (collectively, "Defendant") for personal injuries he sustained in the fall.[2] Mr. Broyles alleged, in pertinent part, that Defendant caused his injuries by failing to remove snow and ice from the premises or by failing to follow proper procedures to protect him from the dangerous and unsafe condition. Defendant filed an answer generally denying the allegations and, after the parties engaged in discovery, Defendant filed a motion for summary judgment. Defendant argued that summary judgment was appropriate because no duty was owed to Mr. Broyles to remove snow and ice from the premises during an ongoing winter storm.

After hearing arguments on the motion, the trial court entered an order granting summary judgment to Defendant. The court explained as follows:

> After due consideration of the arguments of counsel, briefs submitted, and the entire record as a whole, the Court finds as follows: There are no genuine issues of material fact. The Plaintiff went to the Defendant's place of business, Hickory Creek Barbeque at a time when freezing ice and snow were falling. It is stipulated the Plaintiff fell entering Hickory Creek Barbeque. The Court finds that Defendant did not have an

---

[1] The restaurant's name also appears in the record as "Hickory Creek Barbeque."

[2] Mr. Broyles also filed suit against an entity known as Duggin Family Limited, but he later voluntarily dismissed his claims against that entity.

obligation under the laws of Tennessee to begin removing snow and ice before the precipitation ended. It is undisputed that snow or ice began falling for at least five minutes before the Plaintiff reached the Defendant's place of business. It would not be feasible or fair to impose a duty on the landowner to continuously remove snow or ice during the middle of a winter storm.

Mr. Broyles appealed and presents three issues for our review, which we consolidate and restate as follows: whether the trial court erred in concluding that summary judgment was appropriate because Defendant owed no duty to Mr. Broyles to protect him from accumulated snow and ice on the premises during an ongoing winter storm.[3]

STANDARD OF REVIEW

We review a trial court's summary judgment determination de novo, with no presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015). This means that "we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Id.* We "must view the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in that party's favor." *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002); *see also Acute Care Holdings, LLC v. Houston Cnty.*, No. M2018-01534-COA-R3-CV, 2019 WL 2337434, at *4 (Tenn. Ct. App. June 3, 2019).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." TENN. R. CIV. P. 56.04. A disputed fact is material if it is determinative of the claim or defense at issue in the motion. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008) (citing *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)). When a party moves for summary judgment but does not have the burden of proof at trial, the moving party must submit evidence either "affirmatively negating an essential element of the nonmoving party's claim" or "demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Rye*, 477 S.W.3d at 264. Once the moving party has satisfied this requirement, the nonmoving party "'may not rest upon the mere allegations or denials of [its] pleading.'" *Id.* at 265 (quoting TENN. R. CIV. P. 56.06). Rather, the nonmoving party must respond and produce affidavits, depositions, responses to interrogatories, or other discovery that

---

[3] Mr. Broyles stated his issues as follows:

1. Defendant has a duty to exercise reasonable care and maintain safe premises for its customers.
2. Whether Defendant exercised reasonable care is a disputed question of fact for the jury to decide.
3. Trial Court erred by granting Defendant's Motion for Summary Judgment.

"set forth specific facts showing that there is a genuine issue for trial." TENN. R. CIV. P. 56.06; *see also Rye*, 477 S.W.3d at 265. If the nonmoving party fails to respond in this way, "summary judgment, if appropriate, shall be entered against the [nonmoving] party." TENN. R. CIV. P. 56.06. If the moving party fails to show he or she is entitled to summary judgment, however, "'the non-movant's burden to produce either supporting affidavits or discovery materials is not triggered and the motion for summary judgment fails.'" *Martin*, 271 S.W.3d at 83 (quoting *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998)).

ANALYSIS

Mr. Broyles's primary argument is that Defendant owed a duty to protect customers from the dangerous condition created by the accumulation snow and ice on the porch area. He presents two theories for why Defendant owed a duty. First, he contends that Defendant owed a duty to remove the snow and ice accumulated on the porch area. Second, he contends that, if Defendant did not owe a duty to remove the accumulated snow and ice, Defendant at least owed a duty to block off the entrance to the restaurant and force customers to use only the drive-thru.

We begin with Mr. Broyles's contention that Defendant owed a duty to remove the accumulated snow and ice from the porch area. He alleges that Defendant had a "duty of reasonable care to make sure that the porch was free from any ice and/or snow accumulation that could cause [him] to slip and fall." For reasons discussed below, we respectfully disagree.

Duty has been described as being "'a question of whether the defendant is under any obligation for the benefit of the particular plaintiff.'" *Dooley v Everett*, 805 S.W.2d 380, 384 (Tenn. Ct. App. 1990) (quoting W. Keeton, PROSSER AND KEETON ON THE LAW OF TORTS § 53 (5th ed. 1984)). Furthermore, "[t]he existence or nonexistence of a duty owed to the plaintiff by the defendant is entirely a question of law for the court." *Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993). In making his argument that Defendant owed him a duty, Mr. Broyles correctly points out that the general law in Tennessee for premises liability cases imposes a duty on those who own or control property to protect individuals on the property from unreasonable risks of harm. *Rice v. Sabir*, 979 S.W.2d 305, 308 (Tenn. 1998); *see also Bowman v. State*, 206 S.W.3d 467, 473 (Tenn. Ct. App. 2006). This duty, however, does not make an owner or occupier of property an absolute insurer of the safety of persons on the premises. *Eaton v. McLain*, 891 S.W.2d 587, 594-95 (Tenn. 1994). The Tennessee Supreme Court has explained the duty owed as follows:

> In a premises liability case, an owner or occupier of premises has a duty to exercise reasonable care with regard to social guests or business invitees on the premises. The duty includes the responsibility to remove or warn against latent or hidden dangerous conditions on the premises of which

one was aware or should have been aware through the exercise of reasonable diligence.

*Rice*, 979 S.W.2d at 308 (footnote omitted). The Court further explained that "[t]he duty imposed on the premises owner or occupier, however, does not include the responsibility to remove or warn against 'conditions from which no unreasonable risk was to be anticipated, or from those which the occupier neither knew about nor could have discovered with reasonable care.'" *Id.* at 309 (quoting W. Page Keeton, Prosser & Keeton on Torts, § 61 at 426 (5th ed. 1984)). Therefore, "a plaintiff in a premises liability case must generally prove that [a dangerous condition] existed for such a length of time that the property owner knew, or in the exercise of ordinary care should have known, of its existence." *Bowman*, 206 S.W.3d at 473.

Mr. Broyles's argument relies entirely on the foregoing general principles and fails to acknowledge pertinent caselaw specifically addressing a premises owner's duty when natural accumulations of snow and ice have created a dangerous condition on the premises. Because dangerous conditions caused by natural accumulations of snow and ice "are considered to be among the 'normal hazards of life,'" Tennessee courts have held that property owners "are not required to keep their premises free of natural accumulations of snow and ice at all times." *Clifford v. Crye-Leike Com., Inc.*, 213 S.W.3d 849, 853 (Tenn. Ct. App. 2006) (quoting *Grizzell v. Foxx*, 348 S.W.2d 815, 817 (Tenn. 1960)). Furthermore, this Court has declined to impose a duty on owners or occupiers of property "to continuously remove snow or ice in the middle of an ongoing winter storm." *Id.* at 853; *see also Simmons v. Russell*, No. 01A01-9709-CV-00467, 1998 WL 251751, at *3 (Tenn. Ct. App. May 20, 1998). The courts of this state have instead held that property owners "are expected to take reasonable steps to remove snow and ice within a reasonable time after it has formed or accumulated." *Bowman*, 206 S.W.3d at 473-74 (citing *Grizzell*, 348 S.W.2d at 817).

Here, it is undisputed that it began to snow and sleet either when Mr. Broyles arrived at Tractor Supply or while he was inside the store. He spent between ten and thirty minutes inside the store before leaving to go to Hickory Creek Barbecue, which was a short drive across the parking lot. Snow and sleet continued to fall during this short drive and as Mr. Broyles arrived at the restaurant at 11:10 a.m. At the time Mr. Broyles fell, the precipitation had not ceased to fall. We, therefore, conclude that the winter storm was ongoing and affirm the trial court's finding that Defendant owed no duty to Mr. Broyles to begin removing the snow and ice before the precipitation ended.[4]

---

[4] Much of Mr. Broyles's appellate brief is devoted to arguing that issues related to comparative fault created questions for the jury concerning the reasonableness of Defendant's actions or inactions, especially in relation to Defendant not operating solely from the drive-thru. Our conclusion that Defendant owed no duty pretermits these arguments. *See Green v. Roberts*, 398 S.W.3d 172, 177 (stating that "the initial focus is on whether a duty exists—'only after a duty is established does comparative fault come into play'") (quoting *Coln v. City of Savannah*, 966 S.W.2d 34, 42 (Tenn. 1998), *overruled on other grounds*).

We turn now to Mr. Broyles's next contention that, even if Defendant had no duty to remove the accumulated snow and ice, Defendant still had a duty to "close[] the walk-in business entrance forcing customers to use only the drive-thru window." Specifically, Mr. Broyles argues that Defendant should have protected him from the dangerous condition created by the accumulated snow and ice by "put[ting] up a rope to block off" the entrance to the restaurant and "operating from the drive-thru only." We discern that Mr. Broyles's argument here is that Defendant owed him a duty to warn customers that accumulated snow and ice had created a dangerous condition on the property.

This Court's decision in *Clifford v. Crye-Leike Commercial, Inc.*, 213 S.W.3d 849 (Tenn. Ct. App. 2006), is pertinent to this issue. In that case, Mr. and Mrs. Clifford ventured out during a heavy snowstorm to pay an insurance premium. *Id.* at 851. The entrance to the insurance company's office had a wheelchair ramp that was completely covered by snow by the time the Cliffords arrived at the property. *Id.* at 852. Snow continued to fall as Mr. Clifford exited his vehicle and entered the office to pay his premium. *Id.* at 851. Upon exiting the office to return to his vehicle, Mr. Clifford slipped off the side of the concealed wheelchair ramp and injured his ankle. *Id.* at 852.

The Cliffords sued the property owner, alleging, among other things, that the property owner owed a duty "at least to warn passersby that a wheelchair ramp was concealed beneath the newly fallen snow." *Id.* at 853. This Court disagreed and held that, under the circumstances of the case, the property owner owed no duty to warn of the snow-covered wheelchair ramp. *Id.* at 854. We explained that the duty to warn issue "must be analyzed with regard to the foreseeability and gravity of the harm and the feasibility and availability of alternative conduct that would have prevented the harm." *Id.*; *see generally Coln*, 966 S.W.2d at 43 (stating that foreseeability analysis involved "whether [the plaintiff] has made any showing from which it can be said that the defendants reasonably knew or should have known of the probability of an occurrence such as the one which caused [her] injuries") (citation modified). Given the heavy snowstorm and the fact that the snow continued to fall, the court concluded that the property owner did not act unreasonably by not beginning efforts to survey the property "to determine whether the snowstorm had created conditions that would be abnormally dangerous to the public." *Clifford*, 213 S.W.3d at 854.

Nothing in the record of this case indicates that the winter storm was as severe as the one involved in *Clifford*, but Mr. Ferrell described the snow and sleet as "coming down," and it is undisputed that the precipitation continued to fall at the time Mr. Broyles fell. Furthermore, even using Mr. Broyles's estimation of time for when the precipitation began to fall and how long he and Mr. Ferrell were at Tractor Supply, the precipitation had, at most, been falling only between thirty and thirty-five minutes. Therefore, Defendant did not act unreasonably in not beginning its efforts to survey its property to determine whether the winter storm had created an abnormally dangerous condition at the entrance to the restaurant. Accordingly, under the circumstances of this case, Defendant did not have a

duty to warn customers that accumulations of snow and ice had created a dangerous condition on the porch area.

CONCLUSION

The judgment of the trial court is affirmed. Costs of this appeal are assessed against the appellant, Jackie Mansfield Broyles, for which execution may issue if necessary.


/s/ Andy D. Bennett
ANDY D. BENNETT, JUDGE